# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LOXLEY SOUTH, L.L.C., | ) |
|     Plaintiff / Counter Defendant, | ) |
| v. | ) CIVIL ACTION 10-0024-KD-N |
| WESTERN EXPRESS, INC. | ) |
|     Defendant / Counter Claimant. | ) |

## ORDER

This action is before the Court on cross-motions for summary judgment. Specifically, the motion for summary judgment filed by defendant Western Express, Inc. (Western), brief in support, suggested determinations of undisputed facts and conclusions of law (docs. 69-71), the response and exhibits filed by plaintiff Loxley South, LLC (Loxley South) (docs. 86, 87) and Western's reply (doc. 91); and Loxley South's motion for partial summary judgment, brief in support, suggested determinations of undisputed facts and conclusions of law, and evidentiary submissions (docs. 74-80), the response and exhibits filed by Western (doc. 89) and Loxley South's reply (doc. 90).[1]

Upon consideration and for the reasons set forth herein, Western's motion for summary judgment on Loxley South's claims of breach of contract, declaratory relief, and specific performance is GRANTED and Loxley South's motion for partial summary judgment is DENIED, in part.

---

[1] Western has filed a motion to strike portions of the affidavit of J. Gaines Betbeze and Donald W. Rowe (docs. 92, 94). The Court has not relied upon the portions of the affidavits which Western moves to strike in reaching its decision. Therefore, the motions to strike are MOOT.

I. Procedural background

In December 2009, Loxley South filed suit for specific performance, declaratory and injunctive relief and breach of contract against Western, Wayne M. Wise, Donna Wise, and JP Morgan Chase Bank, NA. Loxley South seeks specific performance to enforce the terms of an Agreement of Sale for property between Western and Loxley South whereby, as part of the consideration for the sale, Western was to construct a road across its property to give Loxley South road and utility access to its property. Alternatively, Loxley South seeks money damages for breach of the Agreement and declaratory relief in the form of a declaration and order that a public street or roadway be dedicated across Western's property (doc. 1, p. 7-19, complaint and exhibits).

Defendants removed the action to this Court on basis of diversity jurisdiction (doc. 1, notice of removal and attachments). 28 U.S.C. § 1332; 28 U.S.C. § 1441. The Wises and JP Morgan have been dismissed from this action (docs. 37, 39).

After removal, and after the Wises and JP Morgan were dismissed, Western filed its first amended answer and counterclaim against Loxley South (doc. 51, p. 7-9). In Count One, Western seeks compensatory, consequential, and punitive damages for fraud by Loxley South. In Count Two, Western seeks to rescind the Agreement, recover all sums paid for the property and paid for its efforts to construct the road, and transfer the property back to Loxley South. In Count Three, Western claims that Loxley South has been unjustly enriched by the sale and seeks equitable relief of returning the property to Loxley and Loxley reimbursing Western for the sums paid. Western also asserted various defenses as to why it should not be held liable for failing to construct the improvements, including an assertion that the Agreement was abandoned when Loxley South agreed to transfer title to the Property to the Wises instead of Western.

II. Findings of fact

In 2006, primarily in November 2006, Loxley South, through its manager J. Gaines Betbeze, and Western through its attorney Isham B. Bradley, negotiated the purchase of fifty (50) acres of undeveloped real property (the Property) (doc. 75, p. 9-12, doc. 80, p. 2-3, doc. 70, p. 4). On December 12, 2006, an Agreement of Sale (the Agreement) was signed by Loxley South as seller and Western as purchaser. (doc. 1, p. 15-16). The Property was situated in Baldwin County, Alabama, and within the zoning and planning jurisdiction of the Town of Loxley (doc. 70, p. 1-4).

Attached to the Agreement as Exhibit A was a copy of an unrecorded subdivision plat which divided the Property into seventeen (17) lots (doc. 1, p. 17). On this copy, the parties identified the Property by superimposing an outline and designating "Phase I" and "Phase II" (doc. 1, p. 17).[2] In addition, two roads within the Property were drawn on the plat: Business

---

[2] The attachment to the Agreement appears to be a copy of the Master Plan Sketch of Loxley I-10 Business Park East but without the box which identifies the project, the engineer, etc. (compare doc. 1, p. 17, with doc. 76-3, p. 10, Master Plan Sketch).

Originally the property purchased in 1979 consisted of 155 acres (doc. 71, p. 76). Then the subdivision began. First, Loxley Business Park East Unit One was platted with four (4) lots adjoining Highway 49 and then Unit One was re-subdivided. These two subdivision plats were approved and are recorded (doc. 71, p. 3, 157-158, Slide 2223-B, 2235-A). This property is not part of this litigation.

A third subdivision plat was made. A Master Plan Sketch of Loxley Business Park East was presented to the Loxley Planning Commission for its approval. This Sketch platted the units, numbered lots, and the part reserved for future development. The Master Plan Sketch was approved by the Loxley Planning Commission but not recorded (doc. 71, p. 3, 172). On this Sketch, Unit Two is the same property as the parties' "Phase I" and Unit Three is the same property as "Phase II".

A fourth subdivision plat was made. This subdivision platted Loxley I-10 Business Park East Unit Two which consisted of an undeveloped thirty-eight (38) acres divided into twelve (12) lots. This plat was preliminarily approved by the Loxley Planning Commission but was not recorded (doc. 71, p. 160). This property is the same property as the parties' "Phase I".
(Continued)

Park Drive and Commercial Park Drive. The plat also identified a ninety-one (91) acre parcel contiguous to the east of the Property. These undeveloped ninety-one (91) acres, which Loxley South owned, were shown on the plat divided into twenty (20) lots (doc. 1, p. 17).

The Property was ultimately not titled to Western when the purchase took place. Prior to closing, Western's representative, Bradley, notified the closing agent and Loxley South's manager, Betbeze, that the Property would be purchased in the name of Wayne and Donna Wise (doc. 70, p. 7; doc. 76-3, p. 7, Betbeze Affidavit; doc. 77-10, certified copy of deed). Wayne M. Wise is an officer, director, shareholder or employee of Western (doc. 51, p. 4, first amended answer and counterclaim). The Wises each owned a forty-five (45%) interest in Western (doc. 76-2, p. 48, Bradley deposition). The Wises had not signed the Agreement (doc. 76-1, p. 2). The Agreement was signed by Bradley, as Western's attorney (doc. 76-1, p. 2).

The sale closed and the Wises took title in their individual capacity (doc. 77-9, Settlement Statement; doc. 77-10, deed dated December 27, 2006 ). Wayne Wise borrowed money from Western to purchase the property and executed a note to repay Western (doc. 78-4). The Wises intended to build a truck terminal on the Property and lease the terminal to Western (doc. 71, p. 9). On March 15, 2008, the Wises transferred the real property to Western (doc. 78-6, certified copy of deed). The Wises are no longer parties to this action.[3]

---

The fifth subdivision of the property occurred when all the property except Unit One as re-subdivided, was deeded from H-R Joint Venture to Loxley South, LLC by metes and bounds description of "Parcel 1" and "Parcel 2" (doc. 71, p. 82).

Ultimately, "Parcel 1" was sold to the Wises and "Parcel 2" retained by Loxley South.

[3] The Wises were dismissed from this action because the complaint failed to state a claim against them since they were not a party to the Agreement upon which Loxley South based its claims and because they no longer owned the Property at issue having transferred it to Western (doc. 37).

In Paragraph five of the Agreement, as part of the consideration for the sale, Western agreed to make certain improvements to the Property, as follows:

> 5. Purchaser covenants and agrees to construct Phase I and Phase II within six (6) months from date of closing, and further covenants and agrees that Business Park Drive, as shown on Exhibit "A", shall be constructed and the road and all utilities shall be stubbed out at the East Line of Phase II, and thereby be available to Seller for future development of the lands adjoining to the East. This provision shall survive the closing.

(doc. 1, p. 15).

These improvements would provide access and utilities from Highway 49 to the eastern boundary of the Property (Id., p. 17). This provision was important to Loxley South because Loxley South owned the landlocked parcel consisting of ninety-one (91) acres to the east of the Property (Id).[4] Western has not fulfilled its promise to build the road and stub out the utilities as designated on the plat.

After the sale, Bradley began the ground work for construction of the improvements including Business Park Drive with utilities and Western's truck terminal (doc. 76-2, p. 67-70, Bradley deposition). Bradley hired Donald W. Rowe, the same engineer who had performed engineering work on the Property for Loxley South (Id. p. 64). Bradley also talked with representatives of the Town of Loxley and its Planning Commission and attended meetings, and hired a wetlands consultant who had also previously worked for Loxley South (Id. p. 61-62). Bradley acted on "behalf of the Wises individually and Western Express as far as its interest as a tenant." (Id., p. 66). However, ultimately, Business Park Drive was not built (Id., p. 86).

III. Conclusions of law

A. Summary judgment standard

---

[4] In the initial disclosures, Loxley South estimated the cost of road construction as $1,081,803.46 (doc. 71, Exhibit K).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The Eleventh Circuit has stated:

> When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party.

*United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548 (1986)).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the

burden of proof, 'the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S. Ct. at 2552 (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 999 (11th Cir.1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir.2004).

IV. Analysis

A. Loxley South's Claims

On motion for summary judgment, Western argues several reasons why the Agreement is not enforceable, including the defense of abandonment and that the contract provision to build the road is too vague to support specific enforcement. A review of the facts and case law leads to the conclusion that Western is unlikely to prevail on its defenses save one: The Agreement is void and therefore, Loxley South cannot prevail on its claim for declaratory relief, breach of contract or specific performance as to paragraph five of the Agreement. Specifically, the Agreement was void *ab initio* due to the fact that the objective of the Agreement violated Alabama law and the Town of Loxley Subdivision Regulations. The Code of Alabama § 11-52-33 provides as follows:

> Whoever, being the owner or agent of the owner of any land located within a subdivision, transfers or sells or agrees to sell or negotiates to sell any land by reference to or exhibition of or by other use of a plat of a subdivision before such plat has been approved by the planning commission and recorded or filed in the

7

office of the appropriate county probate office shall forfeit and pay a penalty of $100.00 for each lot or parcel so transferred or sold or agreed or negotiated to be sold, and the description of such lot or parcel by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring shall not exempt the transaction from such penalties or from the remedies provided in this section.

The municipal corporation may enjoin such transfer or sale or agreement by a civil action for injunction brought in any court of competent jurisdiction or may recover the same penalty provided in this section by a civil action in any court of competent jurisdiction.

Ala. Code § 11-52-33. There is no dispute that Loxley South as owner of the Property, in agreeing to sell the Property to Western, made "reference to . . . a plat of a subdivision" that was not filed in the "appropriate county probate office" as required by Ala. Code § 11-52-33. Similarly, the Town of Loxley, Alabama Subdivision Regulation 3.0(B) provides in relevant part that,

> [n]o owner or agent of the owner, of any parcel of land located in a proposed subdivision, shall transfer to sell any such parcel before a final plat of such subdivision has been approved in accordance with the provisions of these Regulations by the Planning Commission[5] and filed with the Judge of Probate, Baldwin County. . . .

(doc. 77-2, p. 8)

As explained in *Kilgore Development, Inc. v. Woodland Place, LLC.*, 47 So. 3d 267, 271(Ala. Civ. App. 2009), "a contract obtained in violation of the subdivision control statutes is void." Loxley South's attempt to factually distinguish its situation from *Kilgore* is unpersuasive; the law clearly requires that the subdivision plat be approved and filed with the appropriate probate court. Thus, even if the Court was convinced that the plat had been properly approved,

---

[5] The Subdivision Regulations for the Town of Loxley require that improvements shown on the plat must be completed, approved by the Building Official, submitted and approved by the Planning Commission and the Town Council before filing with the Probate Judge as the official plat (doc. 76-12, Loxley Subdivision Regulations, at § 3.2 E).

8

there is no dispute that the plat was not filed.

Loxley South also argues that they were exempt from Regulation 3.0(B) based on the language of Town of Loxley Subdivision Regulation 4.4. Regulation 4.4 exempts certain transactions from the Town's subdivision regulations including the "division of land into parcels greater than five (5) acres where no street construction is involved." Loxley South professes not to understand what is meant by "where no street construction is involved" and points out that the transaction at issue must have passed muster under the regulations because the Town of Loxley was willing to approve a subsequent plat submitted by the Wises. This argument is also unpersuasive. The phrase "where no street construction is involved" is not ambiguous. Moreover, as clearly demonstrated by this dispute, as well as the plat of the subdivision, street construction was clearly contemplated, i.e., "street construction is involved". Also, the Town of Loxley's subsequent approval of an amended plat in no way provides an endorsement or ratification of the legality of the previous transaction.

As explained in *Kilgore*, "[i]t has long been the law in Alabama that when a contract is made in violation of a statute, that contract is generally void and unenforceable" and that "a contract obtained in violation of the subdivision control statutes is void." *Kilgore*, at 270-271 (citations omitted). Accordingly, the Agreement is unenforceable and Loxley South's claims for breach of contract, declaratory relief, or specific performance fail.

B. Western's Counterclaims[6]

---

[6] Western has abandoned its claim for unjust enrichment. Western did not move for summary judgment on its counterclaim for unjust enrichment (docs. 69, 71), nor did it respond to Loxley South's motion in that regard. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

Western has asserted a fraud claim based on alleged misrepresentations by Loxley South. Because the Agreement is void, Western has failed to show any other reliance to its detriment on the alleged false statements made by Loxley South. Accordingly, summary judgment is GRANTED in favor of Loxley South on this claim.

Because the Agreement is void, Western seeks to 1) recover all sums paid for the Property; 2) recover all sums paid to prepare to construct the road, and 3) transfer the Property back to Loxley South. The Court will hold oral argument on this issue on **Thursday, May 26, 2011, 10:00 a.m.** in Courtroom 5 A of the United States Courthouse, 113 St. Joseph St., Mobile, Alabama, 36602.

V. Conclusion

Upon consideration of the evidence and for the reasons set forth herein, Western's motion for summary judgment on Loxley South's claims of breach of contract, declaratory relief, and specific performance is GRANTED. Also, Loxley South's motion for summary judgment on Western's claim of fraud is GRANTED.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure after the Court determines what, if any, relief is available.

**DONE** and **ORDERED** this 10th day of May, 2011.

<u>s / Kristi K DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**